## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| RAMON RIVERA and LUCERO RIVERA, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 09 CV 2626 |
| CITY OF CHICAGO, Chicago Police Officers HECTOR FUENTES, Star 11396 PETE GURSKIS, Star 14029, JOHN BERTETTO, Star 16337, and ANN JAROS, Star 17582, | ) ) ) ) ) ) | District Judge: Charles R. Norgle, Sr. |
| Defendants. | ) ) | |

## DEFENDANTS' MOTIONS *IN LIMINE*

Defendants, City of Chicago and Chicago Police Officers Hector Fuenters, Pete Gurskis, John Bertetto, and Ann Jaros, by and through their attorneys, Johnson & Bell, Ltd., respectfully move this Court, *in limine*, as follows:

1. **Bar Evidence, Testimony, or Argument of Prior Citizen Complaints, including the CR investigation conducted in the present case, and/or other Prior or Current Lawsuits for Alleged Police Misconduct, and Bar Plaintiffs' Intended 404(b) Witnesses.**

Plaintiffs intend to introduce testimony and evidence relating to prior instances of alleged misconduct by the Defendant Officers as evidenced by the fact that they have listed, in their pretrial order as plaintiffs' will call witnesses Paul Taylor and Pedro Juarez as their 404(b) witnesses against Pete Gurskis and Hector Fuentes. (Proposed Pretrial Order, pp. 12, 13). Defendants move to bar this specific evidence, along with all general evidence of unrelated complaints of misconduct and lawsuits, because it constitutes improper character evidence, or propensity evidence, under Fed.R.Evid. 404. Moreover, this evidence is irrelevant, is hearsay, and any probative value it may have is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and its potential to mislead the jury. Fed.R.Evid. 401, 402, 403 and 404.

Any information, allegation, or testimony that the Defendant Officers may have acted wrongfully in the past is nothing more than so-called "bad acts" evidence or "propensity evidence." Propensity evidence is inadmissible under Fed.R.Evid. 404(b) to prove that a party acted on the occasion in question consistent with his alleged bad character. *See Huddleston v. U.S.,* 485 U.S. 681, 685 (1988); *U.S. v. Shriver,* 842 F.2d 968, 974 (7th Cir. 1988). In this case, plaintiffs' only purpose for introducing or suggesting such evidence would be to attempt to fool the jury into believing that because accusations of alleged misconduct had been brought against these officers in the past, and it is therefore likely that the officers acted improperly under the circumstances presented here.

### Testimonies of 404(b) Witnesses

First, plaintiffs' two 404(b) witnesses should be barred because they were never disclosed to the defendants during the course of discovery. Therefore, the defendants were not given the opportunity to depose these two witnesses to test their knowledge and credibility. Federal Rule of Civil Procedure 37 (c) (1) is clear that failure to identify a witness as required by Rule 26(a) precludes the use of that witness to supply evidence at trial. Thus, based on the failure to disclose plaintiffs' 404(b) witnesses Paul Taylor and Pedro Juarez, the testimonies of these witnesses should be barred.

Second, although Rule 404(b) permits the admission of evidence of other acts, if such evidence is directed toward establishing a matter in issue other than a defendant's propensity to commit the act charged, the plaintiffs in this case will not be able to satisfy his burden under Rule 404(b) of explicitly articulating which exception to the general rule applies. *U.S. v. Zapata,* 871 F.2d 616,620-21 (7th Cir. 1989). To introduce such evidence, a party must show that (1) the evidence establishes a matter other than propensity, (2) the other act is "similar enough and close

enough in time be relevant to the matter in issue," (3) evidence of the other act is sufficient to permit a jury to find that the act occurred, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *Treece v. Hochstetler,* 213 F.3d 360, 363-64 (7th Cir. 2000). In fact, in order to ensure that the evidence at issue is not offered to establish officers' propensity to commit the acts for which they are accused, the courts require that the prior bad acts evidence bear "a singular strong resemblance to the pattern of the offense charged." *United States v. Robinson,* 161 F.3d 463, 468 (7th Cir. 1998) (emphasis added) (quoting *United States v. Shackleford,* 738 F.2d 776, 783 (7th Cir. 1984). An examination of the two CR files brought by 404(b) witnesses Paul Taylor and Pedro Juarez reveal that none of the *Treece* standards are met here, and the evidence and testimony are being offered solely as inadmissible "propensity" evidence would be extremely prejudicial to all of the officers in this case.

Regarding witness Paul Taylor, the incident complained of occurred on September 25, 2005, while the alleged incident in the present case occurred on July 27, 2008, almost three years before the incident in this case. (Information regarding Paul Taylor's incident was taken from the Complaint Register (CR) file# 308694 lodged with Office of Professional Standards (OPS)). The only similarities between Taylor's complaint to OPS and this case is that OC spray was discharged in order to subdue the offender who was actively resisting arrest and it was brought against two of the Defendant Officers: Hector Fuentes and Pete Gurskis. But that is where the similarities between the two cases end. Taylor's arrest involved responding to a radio dispatch of a burglary. A number of victims gave the description of the offender that matched Mr. Taylor's, once he was observed in the area. As soon as Mr. Taylor was approached by the police, he fled on foot and a number of officers, including Fuentes and Gurskis, gave chase. Once apprehended, Mr. Taylor became combative and fought with the arresting officers to defeat the arrest. The arresting officers applied

3

force necessary to subdue Mr. Taylor in order to place him in custody, including pepper spraying him. During a show-up, all of the burglary victims positively identified Mr. Taylor as the offender who stole their personal property.

Here, around 6:15 in the morning, Defendant Officers Fuentes and Gurskis responded to a noise disturbance at the plaintiffs' house located at 3820 W. 56th Street in Chicago (Rivera house), after the 911 center received numerous calls throughout the entire night and early morning hours regarding live band playing Mexican music in the area. Despite being warned once by the Defendant Officers Fuentes and Gurskis to stop playing the music, the plaintiffs continued to party and the band started playing the music again moments after the officers left the Rivera house. At that time, all four Defendant Officers came back to the Rivera house to issue noise violation tickets and confiscate the band equipment. Upon arrival, they were confronted with plaintiff Ramon Rivera, Jr. (Ramon), holding a Corona beer bottle raised in a threatening manner toward Officer Fuentes. Faced with an immediate threat of receiving a battery, Officer Fuentes tried to place Ramon in custody, but Ramon became aggressive, combative and refused to place his hands behind his back. During the officers' attempts to place Ramon in custody, plaintiff Lucero Rivera (Lucero) started hitting officer Bertetto with her fists and placed her body between Ramon and the officers, at which time she was taken away by Officer Fuentes. Unable to handcuff Ramon, Officer Gurskis discharged an OC spray which had no effect on Ramon, who continued to resist the arrest. Finally, officer performed several open handed head stunts and Ramon was placed in custody.

Thus, there is nothing in this case, except that the pepper spray was discharged, that is even remotely similar with Paul Taylor's complaint to OPS. Whatever the allegations against Officer Fuentes and Gurskis might be in Taylor's complaint, there is nothing similar in this case that meets "a singular strong resemblance" requirement.

Furthermore, short of the OPS complaint, there is no evidence of the other acts sufficient to allow the jury in the present case to find that the incident with Mr. Taylor did in fact occur. All the jury will hear is a number of one-sided mere allegations that were never proven, in fact, found to be "unfounded" by OPS investigators. Finally, because there is not even a tenuous relationship between certain allegations made by Mr. Taylor against Officers Fuentes and Gurskis and the facts of the present case against two other officers, the introduction of Mr. Taylor's testimony would result in unfair prejudice not only to Officers Fuentes and Gurskis, but also to Officers Jaros and Bertetto, who were not subjects of Mr. Taylor's complaint, which would significantly outweigh the value of the contemplated evidence. Fed.R.Evid. 403.

Therefore, the other incident that happened almost three years prior to the instant one, that involved only two defendant officers and not the other two, and that has little similarity with the unique facts of this case, is completely irrelevant to any of the matters at issue here. It is evident that the only reason plaintiffs are seeking to introduce Paul Taylor's testimony is to prejudice the jury and have them believe that defendant officers in this case acted in a similar improper manner under the very different circumstances of this case. Other then impermissible propensity and prejudice, there is no other legitimate reason for Mr. Taylor's testimony in this case.

Regarding witness Pedro Juarez, much of the same can be said. The alleged incident involving Juarez took place on March 19, 2006, more than two before the incident in the present case. (Information regarding Pedro Juarez's incident was taken from the CR file# 311806 lodged with OPS). While Juarez complaint was initiated against both Officers Fuentes and Gurskis, only allegations against Defendant Gurskis consist of physical abuse, while allegations against Officer Fuentes deal with taking $70/$80 from Mr. Juarez and never giving it back to him. Specifically, Juarez was curbed after being observed to have committed a number of traffic violations. When

Officers Fuentes and Gurskis tried to place him in custody, Juarez became hostile and started flailing his arms toward the officers, who applied emergency take down in order to handcuff him. Once again, here, we have completely different circumstances that led to the Defendant Officers' presence at the plaintiffs' home. Officers were summoned to contain the loud music which was the cause of numerous 911 calls to the emergency center. Determined to peacefully write to the owners of the house some noise violation tickets and confiscate the band equipment, instead the officers were faced with angry, hostile and ready to fight plaintiff Ramon who protested the officers' presence on the property. Leaving the officers no choice but to place him into custody, Ramon became combative with the officers, thus leading to the use of the pepper spray and open handed head stunts, which techniques proved effective in finally helping the officers to place Ramon in handcuffs and take him to the squad car.

The Juarez complaint is not close enough in time and/or substance to satisfy the *Treece* test. Furthermore, there is no other evidence of the alleged acts in Juarez sufficient to allow the jury in the present case to find that the incident with Pedro Juarez did in fact occur. Finally, as above, because there is no temporal or substantive relationship between the allegations made by Juarez and the facts of the present case, the unfair prejudice that would result from introduction of testimony by Mr. Juarez would far outweigh any minimal probative value of said testimony. Fed.R.Evid. 403.

The plaintiffs cannot establish that the testimony of the 404(b) witnesses and the other bad acts evidence that they seek to introduce is anything more than propensity evidence. Nor can the plaintiffs establish that this testimony and evidence is even slightly probative in the present case. This failure should cause this testimony and evidence to be barred under FRE 401, 402, and 404.

Moreover, even if there was some probative value in admitting this testimony and evidence identified above, that probative value would be overwhelmingly outweighed by the danger of unfair

prejudice to all of the defendants in this case. Fed. R. Evid. 403; *see also, Shaffer v. Brinegar,* 23 Fed.Appx.580, 584 (7th Cir. 1989), *citing Berkovich v. Hicks,* 922 F.2d 1018, 1022 (2nd Cir. 1991) (holding that the admission of evidence of other complaints against officers was irrelevant and overwhelmingly prejudicial to the defendant); *Lataille v. Ponte,* 754 F.2d 33, 34 (1st Cir. 1985) (prejudicial error to admit past disciplinary record).

### Prior Unrelated Complaint Register Files

Likewise, plaintiffs should be barred from presenting evidence in the present case relating to the unrelated CR #308694 filed by Paul Taylor and #311806 stemming from Pedro Juarez's complaint, both of which were discussed above. Once again, any introduction of these completely different allegations against Officers Fuentes and Gurskis will serve no purpose but to prejudice all of the defendant officers and confuse the jury. In *Moore v. City of Chicago,* 2008 U.S. Dist. LEXIS 31634, *14 (N.D. Ill. 2008), the court explained that by allowing the evidence regarding such complaints, "the defendant officers would be required to defend against the unrelated complaint registers' allegations as well, resulting in trial within trials, risking serious jury confusion. Finally, admission of unrelated complaint registers would result in an inefficient use of time and substantial prejudice to defendant officers." As the *Moore* court correctly noted, introduction of any evidence or testimony of "unrelated" CR files in this case will certainly result "in trial within trials" and "in an inefficient use of time and substantial prejudice" to all of the Defendant Officers. The CR complaints against officers are lodged for a number of different reasons, and neither this Court nor the jury should be asked to speculate whether there is any truth to the other allegations. Evidence of these unrelated CRs would necessitate the introduction of inadmissible hearsay, is irrelevant, and would result in unfair prejudice, and should therefore be barred.

For all of the reasons set forth above, the defendants respectfully request that the plaintiffs' proposed 404(b) witnesses be barred, and any evidence of prior police misconduct, including, CR numbers and lawsuits against the defendant officers, be excluded.

### 2. All Non-party Witnesses Should Be Excluded From The Courtroom During Trial Testimony.

Defendants move this Court to exclude all witnesses (other than the parties) from the courtroom during the opening statements and testimony of any and all other witnesses. Such an order is proper because it prevents the contamination of the testimony of potential witnesses. Fed.R.Evid. 615.

### 3. Motion to bar evidence regarding a "Code of Silence," "Blue Wall," or that a "cover-up" or conspiracy existed in this case.

Generalized allegations of a police "code of silence," or that police officers cover up for other police officers, i.e. "a blue wall" is akin to the conclusion that all politicians, when the public's back is turned, accept bribes. In a court of law, justice is dispensed based on evidence of articulated and proven facts, not on generalized assumptions and prejudices. *Sanders v. City of Indianapolis,* 837 F. Supp. 959, 963 (S.D. Ind. 1992). The sole purpose for the introduction of this testimony or argument is to invoke images in the minds of jurors that officers run amok to protect their own. The jury's decision must be based upon facts, not speculation or rumination regarding the general nature of police officers. In that regard, this evidence is no different from bad acts evidence. Further, plaintiff lacks a foundation to make this argument. Accordingly, pursuant to Rules 401, 402 and 403, plaintiff should be barred from adducing or presenting evidence of any alleged police "code of silence" or "blue wall," Fed.R.Evid. 401, 402 & 403.

Furthermore, plaintiffs in this case have no evidence that Defendant Officers and/or other non-parties were involved in conspiracy to cover up any of the defendants' alleged conduct. In fact,

the plaintiffs have never alleged a conspiracy claim against the Defendant Officers and any attempt to introduce conspiracy or "cover up" theory at trial will merely confuse the jury. (See Plts' Cmplt. Dkt.1). Simply put there are no other issues relating to a conspiracy for the jury to decide in this case. Insinuation of a conspiracy would serve only to inflame the passions of the jury and unfairly prejudice Defendant Officers.

Plaintiffs' attack on the credibility of the officers' testimony by noting inconsistencies and/or lack of memory can be done without arguing that a conspiracy was in place to deprive the plaintiffs of their rights. If plaintiffs, their witnesses, or counsel are allowed to testify or argue that they believe the Defendant Officers conferred with other police officers to "cover up" alleged misconduct, it would only serve to confuse the jury, especially since other police officer witnesses will testify but are not named as defendants in this matter. Given the obvious potential for prejudice to the defendants if plaintiffs were allowed to make arguments regarding these volatile issues, the only way to prevent significant prejudice is to bar plaintiffs from making any reference to or insinuation of a "conspiracy," "cover up," or other improper agreement involving the Defendant Officers and/or any member of the Chicago Police Department. Therefore, due to a complete lack of factual basis, high risk of jury confusion, as well as substantial prejudice, defendants move to bar any evidence or making any statement/argument indicating that a "cover-up" or conspiracy existed in this case.

**4.      Any Testimony, Evidence, Argument or Comments Regarding Other Events Concerning Allegations of Police Misconduct in the Media or any other Forum Should be Barred.**

In recent months and years, allegations of misconduct by members of the Chicago Police Department have received media coverage in the city's major newspapers, local news broadcasts, and on the internet. Certain allegations have even received nation-wide coverage.

The Defendant Officers have absolutely nothing to do with any of these publicized incidents. Moreover, if Plaintiff is allowed to introduce such evidence, Defendants would have no choice but to refute it. This would create a trial within a trial. The resulting impact on judicial economy and the jury of having to listen to, but not resolve, these allegations would prejudice the Defendant Officers in a manner that no defense or instruction could cure. As such, any testimony, evidence, argument or comments regarding these publicized events should be barred. Fed.R.Evid. 401, 402, and 403. References to other allegations of police misconduct during this trial can only serve to inflame the Jury against the police in general, and against Defendants in this particular case. Comments and implied references to this affect have no probative value, are irrelevant to the issues presented and are highly prejudicial. *See, Saunders v. City of Chicago,* 320 F.suppl2d 735, 740 (N.D.Ill.2004)(granting identical motion); *Heflin v. City of Chicago,* No. 95 C 1990, 1996 WL 28238 (N.D.Ill. 1996)(Conlon, J).

Therefore, Defendants respectfully request that this Court enter an order providing that plaintiffs, their attorneys, and witnesses are barred from mentioning, referring to, interrogating, questioning, or introducing evidence of events of other alleged police misconduct.

5.      **Any Testimony, Evidence, Argument or Comments Regarding Appointment of Superintendent and Other Police Officials or Departments to Investigate Allegations of Police Misconduct Should be Barred.**

The CPD has undergone several changes in its hierarchy to address concerns of police misconduct. During this transformation, a Superintendent from outside the CPD – Jody Weis – was appointed and a new Department, independent of the Office of Professional Standards, was created to investigate alleged police misconduct. The Defendant Officers are not responsible for any of these changes, and the above mentioned changes have nothing to do with the issues in this case. As such, any testimony, evidence, argument or comments regarding these publicized changes in the

hierarchy of police department should be barred. Fed.R.Evid. 401, 402, and 403. *See, Saunders v. City of Chicago,* 320 F.supp.2d 735, 740 (N.D.Ill. 2004)(granting identical motion); *Heflin v. City of Chicago,* No. 95 C 1990, 1996 WL 28238 (N.D.Ill. 1996) (Conlon, J).

**6.      Any Argument or Implication that the Defendants failed to comply with Pretrial Discovery Should be Barred.**

The Court should bar argument that the Defendants have not complied with or have not been diligent with respect to any discovery request since it is irrelevant to the issues in this case and designed to confuse the jury. Issues of pre-trial discovery are for the Court to resolve, not the jury. Moreover, the Court should bar Plaintiff's counsel from requesting any document from defense counsel in the presence of the jury. Allowing this type of behavior will imply that the Defendants are hiding or did not produce certain documents they were supposed to produce.

**7.      Any Testimony or Argument that the Jury Should Punish the City Should be Barred.**

Defendants move for an order *in limine* barring any argument or inference that the jury should send a message to the City with its verdict, or that the jury should punish the City with its verdict. As a matter of law, the Plaintiff cannot recover punitive damages from the City as a result of this occurrence. *See* 745 ILCS 10/2-102. Sending a message, or punishment, cannot form the basis for any damages other than punitive damages. Accordingly, Plaintiff should not be permitted to imply to the jury that punishment can serve as a legitimate basis for an award against the City.

**8.      Argument Regarding Defendants' Alleged Failure to Call Witnesses Should Be Barred.**

Defendants anticipate that plaintiffs might attempt to argue that Defendants should have called the other police officers who were on the scene as assisting officers participating in the confiscation of the band equipment. However, this is a civil case, and as such, plaintiffs bear the burden of proving their case. Defendants are under no obligation to put on a defense or call

witnesses in order to support a verdict in their favor. Hence, Defendants are under no duty to call any witnesses at trial, and any argument by plaintiffs to the contrary is error, and would improperly shift the burden of proof to the Defendants.

### 9.    Bar Attempts to Condition the Jury to Award a Specific Amount of Money.

Plaintiffs' counsel should not be permitted to inquire of the venire whether he thinks that any amount of money is too little or too much for a certain type of case. These questions are designed not to determine whether jurors will be fair and impartial, but rather designed to probe the result that Plaintiffs can expect from jurors in a particular case. This is not proper purpose of questioning during *voir dire*; accordingly, it is appropriate for the Court to preclude such questioning. *Spray-Rite Service Corp v. Monsanto*, 684 F.2d 1226 (7th Cir. 1982) ("a Golden Rule appeal in which the jury is asked to put itself in the plaintiff's position is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias, rather than on evidence"). *See also Dotson v. Sears, Roebuck and Co.*, 157 Ill.App.3d 1036, 1042 (1st Dist. 1987).

### 10.    Bar any Implication or Testimony that Chicago Police Department Personnel are Being Paid by the City to Appear in Court and Testify.

Chicago Police Department employees often testify at the preliminary hearings and subsequent trials in connection with the criminal charges brought against the offenders. Defendant Officers will be testifying at this trial. Defendants seek to bar plaintiffs from making any statements or inferences that police personnel and/or these Defendant Officers are being paid for their time in court. Any such evidence is irrelevant under Rule 401 and unfairly prejudicial under Rule 403. Testifying in criminal proceedings is part of Chicago Police Officers' duties and responsibilities as police officers. Any testimony or implications that the Chicago Police Officers are financially motivated to bring false changes against individuals because they are getting compensated for time

spent in court is absolutely irrelevant to this case and would unfairly prejudice the Defendant Officers.

**11.     Bar Any Evidence Or Testimony That The City Of Chicago Will Indemnify the Defendants. Fed. R. Evid. 411.**

Plaintiffs should not be permitted to argue or introduce evidence that the individual Defendants may be indemnified by the City of Chicago for any portion of a judgment that might be entered against them. Whether the City provides indemnity is irrelevant to the issue of whether the Defendants are liable for any acts they allegedly committed. Reference to indemnity agreements between employers and employees is similar to reference to liability insurance, which is prohibited by Federal Rule of Evidence 411. *See Laraz v. Holcomb*, 16 F.3d 1513 (9th Cir. 1994) (holding that instructions to a jury on indemnification in § 1983 action required a new trial); *Green v. Baron,* 879 F.2d 305, 310 (8th Cir. 1989) (stating that instructions concerning indemnification are extremely prejudicial); *See also, Lawson v. Trowbridge*, 153 F3d. 368, 379 (7th Cir. 1998). Accordingly, all evidence and argument of this nature should be barred.

**12.     To Bar Comment on the Fact that Defendants have Multiple Attorneys Representing them in this Litigation or any References to the Attorneys for Defendants as "City Lawyers," or "the City."**

During jury selection, openings, the presentation of evidence, and closing, Plaintiff's counsel may attempt to refer to Defendants' attorneys as "City of Chicago lawyers," "City Lawyers," or "the City." The effect of these references will be to create an inference for the jury that the City of Chicago not only represents the Defendants, but also that it will pay any judgment that may be entered against them. Such an inference would be highly prejudicial to Defendants because the jury may believe that since the City is the "deep pocket" it can award money to Plaintiff regardless of the facts, as any jury award will have no impact upon Defendants. *Walker v. City of Chicago,* 1992 U.S. Dist. LEXIS 16454, 91 C 3669 (N.D. Ill. Oct. 27, 1992).

The Defendants stand in exactly the same position as a defendant who tenders defense of a lawsuit to an insurance company. Under any insurance policy an insurance company provides representation to a defendant when he is sued for a covered occurrence. In such a case, a plaintiff is not permitted to raise the issue that the defendant is being represented by the insurer or even imply that the defendant has insurance that may pay any judgment. See Fed. R. Evid. 411.

Here, the Defendants are entitled to have the City of Chicago represent them in this civil suit. To the jury, however, the fact that the City represents the Defendants is likely to lead to the conclusion that the City represents the Defendants and is likely to lead to the conclusion that the City will pay any judgment entered. Accordingly, any statement or suggestion that the Defendants represented by City attorneys may lead the jury to conclude that there may be no personal risk to the Defendants and lead the jury to conclude that there is no harm in entering a judgment against the Defendants regardless of the evidence.

13. **Motion to Bar Lay Witness Testimony Regarding Plaintiff Ramon Rivera's medical conditions, causation, diagnoses or prognoses.**

Defendants move to bar plaintiffs and any of the plaintiffs' lay witnesses from testifying as to any medical conditions, causation, diagnoses or prognoses that plaintiff claims resulted from the incident at issue here. Plaintiffs are not competent to offer testimony regarding any purported medical (physical or psychological) injuries Ramon Rivera may have suffered as a result of this incident aside from testifying about his subjective symptoms (e.g., "pain," "soreness"). As a lay witness, plaintiffs lack the knowledge, skill, experience, training, and education that would qualify them to testify about the nature of any underlying medical condition, its cause, or its permanence as a result of the incident. Because such testimony may only be offered by a properly-disclosed expert witness, and in this case there is none, plaintiffs and their lay witnesses should be barred from testifying about these issues.

**14.    Reference to Chicago Police Department General Orders Should be Barred.**

It is anticipated that the Plaintiffs in this matter may seek to introduce, use, refer to, or elicit testimony about Chicago Police Department general orders and/or special orders relating to search, seizure, arrest or other subjects.  These orders, and the procedures contained therein, are not proper evidence on the issue of whether the Defendant Officers' conduct was unconstitutional, and the admission of this evidence would unduly prejudice the defendants, and confuse the jury on the appropriate standard of liability.

Violations of police department general orders do not amount to a constitutional violation, and such evidence is therefore not relevant under Federal Rule of Evidence 401.  Section 1983 was designed to protect plaintiffs from violations of their constitutional rights, not violations of state law or departmental regulations and guidelines.  *Davis v. Scherer,* 468 U.S. 183, 194 (1984); *Thompson v. City of Chicago,* 472 F.3d 444 (7th Cir. 2006); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir. 1988).  Courts look to federal law, not state or municipal regulations, to determine the existence and scope of personal liberties protected by the "reasonableness" standard under the Fourth Amendment.  *Gordon v. Degelmann,* 29 F.3d 295, 301 (7th Cir. 1994); *Archie v. City of Racine,* 847 F.2d 1211, 1215-1218 (7th Cir. 1988).  Under §1983, the issue is whether an officer violated the Constitution, not whether he should be disciplined by the local police force.  *Smith v. Freland,* 954 F.2d 343, 347-48 (6th Cir. 1992).  Accordingly, whether the Defendant Officers here violated department rules or regulations is irrelevant and immaterial.

Moreover, the introduction of evidence that the Defendant Officers may have allegedly violated some portion of a police department regulation or guideline would be far more prejudicial than probative under Federal Rule of Evidence 403.  It is extremely likely that a jury would be confused about the standard for determining a constitutional violation if presented with such

evidence, and it is also likely that a juror presented with evidence of a "rules violation" would assume, in spite of any cautionary instructions, that a constitutional violation had occurred.

Based on all of the above, any alleged violation of Chicago Police Department regulations, and any attempt to introduce, use, refer to, or elicit testimony about Chicago Police Department regulations, should be barred as inadmissible under Federal Rules of Evidence 401, 402, and 403.

15.     **Motion to Limit the Testimony of Plaintiff Ramon Rivera's Non-expert Treating Physicians to Opinions Regarding the Particular Treatment They Provided.**

Treating physicians must be identified as experts if they are to provide expert testimony. Fed. R. Civ. P. 26(a)(2)(A) ("a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence"); see also *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757-58 (7th Cir. 2004). In this case, plaintiffs have not identified any expert witness as required by Fed. R. Civ. P. 26(a)(2)(A). Instead, plaintiffs disclosed Ramon Rivera's treating physicians as non-expert witnesses, along with the subjects of discoverable information they were likely to have, in his initial disclosures under Federal Rule of Civil Procedure 26(a)(1). None of the treating physicians were identified as experts; therefore, they are fact witnesses whose testimony at trial should be limited solely to the care and treatment each provided plaintiff Ramon Rivera, as identified in plaintiffs' initial disclosures under Federal Rule of Procedure 26(a)(1).

This is particularly important in the present case for two reasons. First, it is anticipated that the plaintiffs will attempt to solicit opinion testimony from physicians regarding the causation or permanency of the plaintiff Ramon Rivera's injury. This type of testimony clearly must be offered by an expert, pursuant to FRE 702 and 703. Second, it is anticipated that the plaintiffs will attempt to solicit opinion testimony regarding the possibility of future injury/disability resulting from

injuries allegedly suffered as a result of the incident. Once again, an expert must give these types of opinions pursuant to the applicable federal rules. Obviously, since no experts have been disclosed by the plaintiff, the introduction of any such testimony, or any other testimony or evidence which must be admitted under FRE 702 and 703 is inappropriate and prejudicial.

As the Seventh Circuit has held in *Musser,* the parties must identify treating physicians as experts if they want them to offer expert testimony at trial, even if they have not been retained for that purpose in anticipation of litigation:

> Formal disclosure of experts is not pointless. Knowing the identity of the opponent's expert witnesses allows a party to properly prepare for trial. Gentiva should not be made to assume that each witness disclosed by the Mussers could be an expert witness at trial. *Patel v. Gayes,* 984 F.2d 214, 217 – 18 (7th Cir. 1993) (affirming, under the pre-1993 Federal Rules of Civil Procedure, the exclusion of expert testimony as to duty of care from treating physicians when they were not disclosed as experts). The failure to disclose experts prejudiced Gentiva because there are countermeasures that could have been taken that are not applicable to fact witnesses, such as attempting to disqualify the expert testimony on grounds set forth in *Daubert v. Merrell Dow Pharm. Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), retaining rebuttal experts, and holding additional depositions to retrieve the information not available because of the absence of a report. In sum, we agree with the district court that even treating physicians and treating nurses must be designated as experts if they are to provide expert testimony.

*Musser*, 356 F.3d at 757-58. Those same arguments apply in this case. During discovery Defendants have relied upon plaintiffs' decision not to identify any expert witnesses, and have proceeded with discovery accordingly. Furthermore, in the pretrial order in this matter, the parties agreed that they did not intend to call any expert witnesses, thereby confirming that the plaintiff Ramon Rivera's treating physicians are not experts, but rather fact witnesses. (See proposed pre-trial order). As a result, at trial, plaintiff Ramon Rivera's treating physician should be barred from giving testimony based upon any special expertise or testimony about issues related to causation, and limited to testifying only about their respective care, treatment, and testing of plaintiff Ramon Rivera as treating physician.

**16.    To Bar Calling of Undisclosed Witnesses and Introduction of Undisclosed Exhibits.**

Defendants move to bar plaintiffs from referring to or calling any undisclosed witnesses, or introducing any undisclosed exhibits not previously disclosed in accordance with Fed.R.Civ.P. 26.

Defendants respectfully request that the Court enter Orders *in limine* consistent with the relief sought by these Motions.

Respectfully submitted,

Officers Hector Fuentes, Pete Gurskis, John Bertetto, and Ann Jaros

/s/ *Alexandria L. Bell*
One of the Attorneys for the Defendants

Frank P. Nowicki
Alexandria L. Bell
Johnson & Bell, Ltd.
33 W. Monroe, Suite 2700
Chicago, Illinois  60603
(312) 372-0770  (Phone)
(312) 372-9818  (Facsimile)